Filed 9/29/22  P. v. Shelton CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH PERRY SHELTON,<br><br>Defendant and Appellant. | A163937<br><br>(Mendocino County Super. Ct. No. SCUK-CRCR-1981-74132) |

In 1981, a jury convicted defendant Joseph Perry Shelton of the first degree murder of Kevin Thorpe, the second degree murder of Laura Craig, two counts of kidnapping, two counts of theft, and two weapons charges.  As to the murder of Thorpe, the jury was given two verdict forms, and it returned the verdict form finding Shelton guilty of willful, deliberate, and premeditated murder, but not felony murder.

In 2015, 34 years after his trial, the Ninth Circuit granted in part Shelton's habeas petition, holding that the prosecutor had violated *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) by withholding impeachment evidence regarding co-participant Norman Thomas, "the only witness who provided direct evidence that Shelton premeditated and deliberated the murder of

1

Thorpe." (*Shelton v. Marshall* (9th Cir. 2015) 796 F.3d 1075, 1089, mod. 806 F.3d 1011 [amending only last sentence of earlier opinion] (*Shelton I*).) Although the court overturned Shelton's first degree murder conviction because of the *Brady* violation, the court did not disturb any of the other convictions, as it found "extremely strong" supporting evidence aside from Thomas's testimony. (*Shelton I,* 796 F.3d at p. 1089.) The prosecution was ordered to retry Shelton for the first degree murder of Thorpe or "to take such other action as may be consistent with this opinion and with federal and state law." (*Shelton I,* 806 F.3d at p. 1011.)

After the Ninth Circuit decision, Shelton pleaded guilty to second degree murder in exchange for the prosecution's agreement not to retry him for the first degree murder of Thorpe. In 2017, Shelton was resentenced on that charge to a term of 15 years to life, concurrent to his sentence for the second degree murder of Craig.

On February 20, 2019, defendant filed a form petition pursuant to former Penal Code section 1170.95[1], alleging that he had been convicted of murder pursuant to the felony-murder rule or natural and probable consequences doctrine. After hearing argument from counsel and reviewing significant briefing, the trial court denied defendant's petition in a lengthy order, finding that defendant had failed to establish that he could not now be

---

[1] Penal Code section 1170.95 (former section 1170.95) has been amended and renumbered as section 1172.6. (Stats. 2022, ch. 58, § 10, eff. June 30, 2022; see also Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.) All subsequent statutory references are to the Penal Code.

convicted of second degree murder as the crime is now defined under sections 188 and 189, subdivision (e). As set forth in its order, the court reviewed the entire trial record, excluded from its consideration the testimony of Norman Thomas, and analyzed the Supreme Court's guidance in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. Based on the remaining evidence, including defendant's trial testimony and prior statements, the trial court found beyond a reasonable doubt that defendant could be convicted of murder under the current version of section 189, subdivision (e) because he was a major participant in the underlying kidnappings who acted with reckless indifference to human life with respect to both victim Thorpe and victim Craig.

In this court, defendant's counsel filed an opening brief asking that we conduct an independent review of the record for arguable issues—i.e., those that are not frivolous, as required by *People v. Wende* (1979) 25 Cal.3d 436. Counsel also informed defendant that he had the right to file a supplemental brief on his own behalf, but defendant declined to do so.

As explained more fully below, we shall dismiss the appeal.

## BACKGROUND

The Ninth Circuit recounted the facts of the "brutal kidnapping and murder of Kevin Thorpe and Laura Craig in 1981" in some detail. (*Shelton I, supra,* 796 F.3d at pp. 1077–1083.) As we noted in defendant's earlier post-conviction appeal in connection with a parole decision, "[t]he basic facts are undisputed." (*People v. Shelton* (Dec. 14, 2016, A147754)

3

[nonpub. opn.] (*Shelton II*); *Shelton I, supra,* 796 F.3d at p. 1078 ["Most of the basic facts are undisputed."].) Relying chiefly on the account of the crimes in our earlier opinion and the Ninth Circuit's decision, we summarize the pertinent facts without relying on any testimony from Norman Thomas.

"In January 1981, Thorpe and Craig stopped in Madeline, California on their way to college. Shelton, along with [Norman] Thomas and Benjamin Silva, spotted the couple at a gas station and subsequently abducted them. They took Thorpe and Craig to Shelton's cabin outside of the town. Thorpe was chained to a tree, and Craig was held inside the cabin. The day after the abduction, Thorpe was shot to death with a machine gun. Thomas dismembered Thorpe's body, and he and Silva disposed of it in a remote location. Craig was kept in the cabin for several days, and was then shot twice along the side of the road." (*Shelton II*, *supra*, A147754.)

Both defendant and Norman Thomas testified at defendant's trial. (*Shelton II*, *supra*, A147754.) Defendant admitted that the three men had discussed "kidnapping a girl" a few weeks before the crimes. (*Ibid.*) Defendant also admitted during law enforcement interviews that he was armed during the initial kidnapping and may have been armed throughout the entire period of the victims' abduction. (*Shelton I, supra,* 796 F.3d at p. 1080 & fn.4.) "According to Shelton, he and Silva together purchased a spotlight with a red cap, which they used to simulate a police light to stop the victims' vehicle. However, [defendant] claimed the light was purchased for an unrelated

4

prank." (*Shelton II, supra*, A147754.) However, an investigator testified that Shelton told him that "prior to the kidnapping, 'there had been a conversation that if in fact [a] kidnapping were to take place that they might have to kill the victims' " and that "Silva and Shelton had purchased the red light in preparation for committing a kidnapping." (*Shelton I,* 796 F.3d at p. 1081.) "After stopping the victims' vehicle with the fake police light, Silva and Thomas entered it, abducted the victims at gunpoint, and drove off to Shelton's cabin. Shelton followed the victims' car in a truck." (*Shelton II*, *supra*, A147754.) When the group got to Shelton's property, "Silva told Craig and Thorpe to get on the back of the truck, which Shelton then drove to the cabin." (*Shelton I,* 796 F.3d at p. 1079.)

Subsequently, Silva and either Thomas or Shelton chained Thorpe to a tree near Shelton's cabin. (*Shelton II*, *supra*, A147754.) Silva and Thomas then left until the next morning. (*Shelton I, supra*, 796 F.3d at p. 1079.) According to Shelton, Silva then said "they needed to move Thorpe because he could be seen from the road. Shelton walked Thorpe up a hill and waited. Shelton said Silva surprised him when he returned with a machine gun and emptied a clip (30 bullets) into Thorpe. Silva fired half of another clip into Thorpe, then gave Shelton the gun and told him to shoot Thorpe. Shelton fired the rest of the clip at Thorpe." (*Shelton II*, *supra*, A147754.) He told an investigator that he recalled shooting Thorpe in the eye. At trial, "Shelton claimed that if he had failed to comply, Silva would have killed

5

him. He denied having prior knowledge of Silva's plan to kill Thorpe." (*Shelton II*, *supra*, A147754.)

Shelton claimed that he had consensual sex with Craig, whereas Silva and Thomas raped her. (*Shelton II*, *supra*, A147754.) "After several days, Silva left the cabin with Craig and Shelton, purportedly to take Craig to see the head of the Hell's Angels." (*Ibid.*) Shelton testified that "Silva stopped along the way to buy Craig a Pepsi and that Silva was very calm, leading him to believe that he would not shoot her. Silva later stopped the truck to change drivers but then suddenly shot Craig as he rounded the vehicle." (*Shelton I, supra*, 796 F.3d at p. 1079.) Although Shelton told the jury he did not know Silva intended to kill Craig when they left the cabin, a police investigator testified Shelton told him that, when Craig left the cabin, Shelton was "90 percent sure" she would be killed. (*Shelton II*, *supra*, A147754.)

The prosecution also introduced into evidence several notes that Shelton wrote to Thomas while the two were in jail after Shelton learned Thomas was cooperating with the prosecution and subsequent to Shelton's inculpatory statements to the police. (*Shelton I, supra*, 796 F.3d at p. 1081.) In one of the notes, Shelton "said that Thomas should testify that Shelton received a ride from an old cowboy after they saw the couple at the gas station and was not seen again until the crimes were over." (*Id.* at p. 1081, fn. 5.)

6

# DISCUSSION

Shelton's counsel's brief correctly recognizes that recent cases have held we are not required to conduct a *Wende* review on a denial of a petition seeking postconviction relief pursuant to section 1172.6. (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1031–1032, review granted October 14, 2020, S264278 (*Cole*); *People v. Figueras* (2021) 61 Cal.App.5th 108, 111 [following *Cole*], review granted May 12, 2021, S267870 (*Figueras*).) Counsel requests, however, that we exercise our discretion to conduct an independent review pursuant to *People v. Gallo* (2020) 57 Cal.App.5th 594, 599 and *People v. Flores* (2020) 54 Cal.App.5th 266, 269 both of which held that while a Court of Appeal is not required to independently review the entire record on appeal from the denial of a petition for resentencing, the court can and should do so in the interests of justice.

We agree with *Cole* and *Figueras*, as well as with the reasoning of *People v. Freeman* (2021) 61 Cal.App.5th 126, 133, in which another panel of this Division declined to extend *Wende* review to an order revoking a defendant's post-release community supervision because such an order is "not a direct appeal from a judgment of conviction." As Shelton has failed to file a supplemental brief raising any issues for our review, we shall dismiss the appeal. (*Cole, supra,* 52 Cal.App.5th at p. 1028 [court may "dismiss appeal as abandoned" when counsel files a *Wende* brief and defendant fails to file a supplemental brief].)

We briefly note, however, that the result would be no different if we exercised our discretion to conduct an independent

review of the denial of Shelton's resentencing petition. (*People v. Flores, supra,* 54 Cal.App.5th at p. 269.) There is ample record support for the trial court's determination that, under the factors set forth in *People v. Banks*, *supra,* 61 Cal.4th at page 803 and *People v. Clark, supra,* 63 Cal.4th at pages 618–622, Shelton was a major participant in the kidnappings who acted with reckless indifference to human life. Numerous facts—such as Shelton's discussions and preparations with Silva and Thomas prior to the kidnappings (including his acknowledgement that the victims might have to be killed); his use of firearms; his act of driving the victims to his cabin after their abduction; his lack of effort to help the victims escape when left alone with them overnight; his shooting of Thorpe; and his failure to help Craig escape when Silva left the car to get her a Pepsi, despite his being 90 percent certain she would be killed—establish that the trial court correctly determined that defendant was not entitled to resentencing under section 1172.6.

## DISPOSITION

The appeal is dismissed.

BROWN, J.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

*People v. Shelton* (A163937)